THORNTON, Appellee and Cross–Appellant, et al.

v.

PARKER, Appellee, et al.; C.C.P.P., Inc. [ZZCP, Inc.], d.b.a. Dirko's Italian Kitchen, Appellant and Cross–Appellee.

[Cite as *Thornton v. Parker* (1995), 100 Ohio App.3d 743.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 94APE01–98.

Decided Jan. 31, 1995.

*Plymale & Associates, Ronald E. Plymale* and *Andrew W. Cecil,* for appellee and cross-appellant Nancy Thornton.

*Willard & Associates* and *Robert H. Willard,* for appellee Dene Parker.

*Bale & Associates, David G. Bale* and *Andrew J. Kielkopf,* for appellant and cross-appellee ZZCP, Inc.

---

WHITESIDE, Presiding Judge.

Defendant ZZCP, Inc., appeals from a judgment of the Franklin County Court of Common Pleas and raises six assignments of error, as follows:

1. "The Trial Court erred in refusing to grant summary judgment or directed verdict to Defendant Dirko's Italian Kitchen (ZZCP, Inc.) where Beverly Parker as sole shareholder of Dirko's and the Defendant tortfeasor Dene Parker testified that Dene Parker was no longer employed at Dirko's at the time of the accident

and the Plaintiff[s] did not produce evidence to support their claim that Dirko's had the right to control Ms. Dene Parker at the time of the accident."

2. "The Trial Court erred in instructing the jury that it could find agency of Defendant Dene Parker for Defendant Dirko's where the Court instructed the jury that 'an agent or employee who engaged at the time of a negligent act in combination of pursuit of the principal's business and personal business is still acting for the company' where there is no evidence of Dirko's 'right of control' over the alleged agent Dene Parker at the time of the accident."

3. "The Trial Court erred in permitting discovery depositions of Defendant Dene Parker and Defendant Beverly Parker to be admitted into evidence for the truth of the matter asserted therein where Dirko's was not represented at the time such depositions were taken and where such testimony was hearsay evidence, not excepted under the Ohio Rules of Evidence or otherwise admissible."

4. "Plaintiffs' Counsel's arguments on closing attributing Defendant Dirko's sole shareholder Beverly Parker with dishonesty for failing to properly respond to a subpoena in order to explain Plaintiffs' failure to produce evidence of Dene Parker's employment at the time of the accident, where the Plaintiff[s] had issued the subpoena one day prior to closing and had not requested admission of the papers available pursuant to subpoena into evidence was unfairly prejudicial to Defendant Dirko's and subject to granting Defendant Dirko's a new trial upon request due to such prejudice despite the Court's cautionary instruction to the jury on objection of counsel."

5. "The Trial Court erred in denying the Defendant Dirko's motion for new trial upon discovery of the inconsistent answers to the special interrogatories to the jury with the jury's general verdict."

6. "The Trial Court erred in denying the Defendant's motion to offset Collateral Benefits from the Industrial Commission for wage benefits and medical expense benefits when such benefits are shown to be reasonably expected to be paid upon Plaintiff's application to the Industrial Commission for supplemental benefits."

Plaintiff Nancy Thornton has also appealed from the judgment and raises two assignments of error, as follows:

1. "The Trial Court erred when it held that the physician-patient privilege applies to physicians hired for defense medical exams."

2. "The Trial Court erred when it did not render judgment in favor of Plaintiffs consistent with the special interrogatories submitted to the jury."

Plaintiff was injured as a result of an automobile accident caused by the negligence of defendant Dene Parker, who was operating an automobile owned by

her mother, Beverly Parker, and allegedly engaged in business on behalf of ZZCP, Inc., d.b.a. Dirko's Italian Kitchen, a business wholly owned by Beverly Parker. Plaintiff, Nancy Thornton, and her husband, Thomas Thornton, commenced this action originally against Dene Parker and Beverly Parker. When it was learned that Beverly Parker operated the business through the corporation ZZCP, Inc., that corporation was named as a party-defendant. The trial court directed a verdict in favor of defendant Beverly Parker. The matter proceeded to trial, and the jury returned a verdict in favor of Nancy Thornton in the sum of $325,000, and in favor of Thomas Thornton in the amount of $50,000, against both defendant Dene Parker and defendant ZZCP, Inc. The claim of Thomas Thornton has been satisfied, and he is not a party to this appeal. Likewise, since no error has been alleged with respect to the directed verdict in favor of defendant Beverly Parker, she is not a party to this appeal. Dene Parker did not join in the appeal by defendant ZZCP, Inc., but is a party to the appeal by plaintiff Nancy Thornton.

The first two assignments of error of defendant ZZCP, Inc. are interrelated and were argued together in its brief. The crux of this contention is that there was no evidence from which the jury reasonably could find that defendant Dene Parker was an agent of defendant ZZCP, Inc. at the time of the accident so as to impute her negligence to ZZCP, Inc.

Dene Parker's mother, Beverly Parker, was the sole shareholder of the closely held corporation, ZZCP, Inc., which, under the name Dirko's Italian Kitchen, operated a pizza shop on Cleveland Avenue, had previously run other pizza shops, and was planning to open a new pizza shop location on Hamilton Avenue at the time of the accident. The evidence indicates that this was essentially a family business and that members of the family worked at the pizza shops from time-to-time. Both Dene and Beverly Parker testified that Dene Parker had been a manager of the Cleveland Avenue pizza shop until the end of August 1990, the accident occurring on September 19, 1990. Both testified that Dene was to work at the Hamilton Road pizza shop when it opened. Both also testified that Dene was not regularly employed in the pizza business at the time of the accident. However, both testified that, at the time of the accident, Dene Parker was on a personal errand, but also was on an errand for her mother to deliver some papers to Dirko's Pizza Kitchen on Cleveland Avenue (the corporation business location). Dene had been helping her mother clean up her mother's house, and various cars were in the driveway. Rather than operate her own vehicle, which apparently was blocked, Dene used her mother's vehicle with her consent to run the errands, including that for her mother pertaining to Dirko's Italian Kitchen.

In reviewing a jury verdict as to the sufficiency of the evidence, we are required to construe the evidence most strongly in favor of supporting the jury

verdict. When considering the manifest weight of the evidence, the test is whether there is competent, credible evidence supporting the jury verdict. We find that both tests have been met with respect to the jury verdict finding Dene Parker to be engaged in the business of her mother's business, that of the solely owned corporation ZZCP, Inc., d.b.a. Dirko's Italian Kitchen, and operating the pizza shop on Cleveland Avenue.

At trial, Dene testified that she had been working for her mother in the pizza business for some time but never received a paycheck and, instead, was paid in cash. She testified that she quit working at the Cleveland Avenue shop "because we were getting ready to open up a shop at the beginning of November, making transitions." She also indicated that her mother also owned the Hamilton Road pizza shop but was changing its name and that she occasionally worked there and helped out when someone else did not show up for work. She testified that her mother owned two other shops which were franchised. She testified, however, that she received no compensation from the end of August until September 19, 1990. She indicated that her mother gave her money from time-to-time out of her own pocket to help her out.

She also testified that, at the time of the accident, she was engaged in errands for herself, as well as an errand for her mother delivering papers to Dirko's Pizza Kitchen on Cleveland Avenue. However, she did not arrive at Dirko's Pizza Kitchen before the accident. Although she was apparently heading in the direction of Dirko's Pizza Kitchen at the time of the accident, she stated that she was going on a personal errand to a Phar–Mor store first, which was in the Northland Plaza Shopping Center. As to her mother, she stated: "I was dropping errands [sic] off at Dirko's, but the business errands were my own." She described the papers as envelopes apparently containing checks to pay suppliers. She also testified that the Hamilton Road pizza shop closed at the end of August and that she was designated to be manager when it reopened.

She was examined by counsel for defendant ZZCP, Inc., as to her understanding of the control exercised over her while she was engaged in her mother's business. At first, she testified that she did not consider the business to have the right to control her activities as an employee but later indicated that she did consider her mother as having some control over her but did not expect her mother to have any control over her at the time of the accident. In her deposition, however, she testified that "I had to go to the business to drop off some papers." She further testified that, for her personal business, "I was going to the post office and the electric company." She did not mention going to Phar–Mor. She further testified that she was on the way to the Cleveland Avenue pizza shop at the time the incident happened. In other words, her deposition testimony differed from her testimony at trial.

Over the objection of defendant ZZCP, Inc., plaintiff was permitted to read the depositions of defendant Dene Parker and defendant Beverly Parker into evidence. Beverly Parker indicated that she owned the business under a corporation, ZZCP, Inc., d.b.a. Dirko's Italian Kitchen, and had operated the pizza shop on Cleveland Avenue for approximately twelve years. She further testified that her daughter, Dene Parker, had worked at the corporation since she was a small child but stopped at the end of August 1990, just nineteen days before the accident. However, she was unable to answer whether her daughter was being paid during September 1990 by the corporation while they were preparing to open the Hamilton Road pizza shop, stating that she would have to look at her file to find out. She testified that she asked her daughter to drop off some envelopes containing checks to pay suppliers at the Cleveland Avenue pizza shop because her daughter was going out to do some personal errands. She described this errand as a personal errand, rather than a business-related errand, even though it involved the business.

In her deposition, Dene testified that she was not employed at the time of the accident, but, both before and after the accident, was employed by Dirko's Pizza Kitchen, her mother's business. She further stated that she was doing business errands and personal errands, stating that "I had to go to the business to drop off some papers." However, when the deposition was given to her to review, she changed this testimony to "just personal, not business errands." She further testified that she was on the way to the Cleveland Avenue pizza shop at the time the accident occurred. Defendant corporation called neither Dene Parker nor Beverly Parker to testify during its case. Nor did they testify on their own behalf at the trial.

With respect to this evidence, defendant ZZCP, Inc. contends first that the trial court erred in refusing to grant summary judgment or a directed verdict for it (the first assignment of error), that the trial court erred in its instruction to the jury that it could find Dene Parker to be an agent of defendant ZZCP, Inc. because there was no evidence of right of control over the alleged agent, defendant ZZCP, Inc. specifically directing the objection to the instruction of the trial court that "an agent or employee who is engaged at the time of a negligent act in a combination of pursuit of the principal's business and a personal business is still acting for the company" (the second assignment of error).

Defendant also contends that the trial court erred in permitting the discovery depositions of defendant Dene Parker and Beverly Parker to be admitted into evidence because, at the time the depositions were taken, defendant ZZCP, Inc., had not yet been made a party to the proceedings and was directly represented by counsel (the third assignment of error). We find no merit to any of these contentions under the circumstances of this case.

First, when the evidence is construed most strongly in favor of plaintiff, reasonable minds could conclude that Dene Parker was acting on behalf of defendant ZZCP, Inc. at the time of the accident. Although both Parkers testified that Dene had ceased working for the business at the end of August 1990, they also testified that she expected to resume working for the business as manager of the Hamilton Road pizza shop as soon as it opened, preparation for which was in progress at the time. Dene testified that she did not receive a paycheck during this time but that her mother gave her some money when she needed it, also testifying that this was also the method of payment of her salary, namely, her mother giving her cash. Beverly Parker was unable to testify as to whether Dene was being paid by the business during this interim period. Construing the evidence most strongly in favor of plaintiff, reasonable minds could infer that Dene Parker remained an employee of defendant ZZCP, Inc. during the transition period and was such an employee at the time of the accident. In this regard, one must remain mindful that the trier of fact is not required to believe the testimony of a witness but may choose to believe part but not all of the testimony of a given witness. The only possible evidence as to the relationship of Dene to the family business was the testimony of the Parkers since plaintiff would have no way of knowing that relationship. However, assuming the jury could reasonably find that defendant Dene Parker was an employee of defendant ZZCP, Inc. at the time of the accident, this does not conclude the inquiry since the question is whether she was engaged in the business of the defendant corporation at the time of the accident or was solely on personal business.

With a family corporation, it is frequently difficult to distinguish where personal and business matters begin and end, even for those personally involved. Construing the evidence most strongly in favor of plaintiff, clearly, defendant Dene Parker was engaged in the business of Dirko's Pizza Kitchen at the time of the accident, being in the process of delivering papers from the corporation president to the corporation business location, such papers being primarily checks with which to pay suppliers to the corporation business.

Defendant corporation makes a great issue over the right to control. The trial court properly charged the jury on this issue. However, the right-to-control factor of agency is a variable concept depending upon the nature of the agency relationship and the function being performed by the agent. Obviously, the president of a corporation is not subject to the same type or nature of control as is an employee performing menial physical tasks. Here, it appears undisputed that the corporation through its president, Beverly Parker, had the right to control where and to whom the corporate papers were delivered. In fact, the indication of the testimony is that the instructions were quite precise. In other

words, defendant Dene Parker was, pursuant to instructions of her mother, Beverly Parker (president of defendant corporation), to deliver the papers in question to the Cleveland Avenue pizza shop location using her mother's car. She was also permitted to run some personal errands for herself (or for her mother), at the time. Although she testified at trial that she was going to the Phar–Mor store first, this was contradicted by her deposition testimony, and the jury was not required to believe her trial testimony that she was going to a Phar–Mor store first, not even having mentioned that trip during her deposition. Defendant corporation relies upon *Hanson v. Kynast* (1986), 24 Ohio St.3d 171, 24 OBR 403, 494 N.E.2d 1091, paragraph one of the syllabus of which reads:

"The relationship of principal and agent or master and servant exists only when one party exercises the right of control over the actions of another, and those actions are directed toward the attainment of an objective which the former seeks.  * * *"

However, as indicated in *Hanson*, at 175, 24 OBR at 406, 494 N.E.2d at 1095:

"The degree of control necessary to establish agency has not been clearly defined.  * * * Instead, courts have generally examined various factors in determining whether the requisite amount of control exists.  One such factor is whether the individual is performing in the course of the principal's business rather than in some ancillary capacity.  * * * Another factor to be considered is whether the individual was receiving any compensation from the principal.  * * * A third factor is whether the principal supplied the tools and the place of work in the normal course of the relationship.  * * *"

Here, the first and third factors are clearly present when the evidence is construed most strongly in favor of plaintiffs.  Defendant, through its president, supplied the means of performing the task, the use of the president's personal automobile.  Likewise, as indicated above, the defendant corporation, through its president, directed the task to be accomplished, namely, delivery of the envelopes containing the checks to the Cleveland Avenue pizza shop.  Even if no compensation was received by Dene for performing the tasks, there was sufficient evidence from which the requisite control could be found by the trier of facts.  Accordingly, the first assignment of error is not well taken.

Since the second assignment of error also is predicated upon the assumption that there was no evidence from which the requisite right of control could be found, it is likewise not well taken, and the trial court did not err in instructing the jury with respect to dual purpose of an agent of an employee at the time of commission of a negligent act.

As to the third assignment of error, the evidence permitting the finding of right to control and agency was presented primarily through the discovery

depositions of defendants Dene Parker and Beverly Parker. Defendant corporation contends that, since it was not represented at the time such depositions were taken, the testimony is hearsay evidence and, therefore, not admissible.

Since defendant Beverly Parker is the president and sole shareholder of defendant corporation, there can be no merit to the contention that her deposition testimony is not admissible, even if defendant corporation was not a party and did not have a lawyer present at the time the deposition was taken. Evid.R. 801(D)(2) provides:

"A statement is not hearsay if:

" * * *

"(2) * * * The statement is offered against a party and is * * * (d) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship * * *."

Clearly, defendant Beverly Parker is an agent of defendant corporation, being its president and sole shareholder. The statement made in the deposition was made during the existence of the corporate relationship and pertained to the business of the corporation since it involved defendant Beverly Parker's, as president of defendant corporation, providing for the payment of bills to the suppliers of the corporation. Accordingly, her testimony is not considered hearsay and is admissible. To some degree, the same is true as to the testimony of defendant Dene Parker, depending upon whether she was an agent of the corporation at the time of the accident. There is no indication that she was not employed by defendant corporation at the time her deposition was taken or the time of trial.

When this action was commenced on December 13, 1991, defendant corporation was named a party, although under a misnomer of "C.C.P.P., Inc., d/b/a Dirko's Italian Kitchen." However, the case had previously been dismissed, and this was a refiling of the case. The deposition of Dene Parker was taken on October 29, 1991, presumably in connection with the dismissed case. Presumably, the deposition of Beverly Parker was taken at the same time, and it was from this deposition that defendant corporation's existence was ascertained. Here, we find no prejudicial error nor abuse of discretion on the part of the trial court. As noted above, for whatever reason, defendant corporation chose not to call either Parker as a witness, but its counsel did cross-examine both when they were questioned by plaintiff's counsel. Although counsel representing defendants Dene Parker and Beverly Parker was separate from counsel representing the corporate defendant, the interests of the corporate defendant and Beverly Parker were identical. She is the sole owner of the corporate defendant. Her testimony indicates that she is in complete charge of the corporation and exercises all

powers. There is no indication as to the directors of the corporation and whether or not she is the sole director. She was present and represented at the time of the deposition of her daughter, as well as her own deposition. The reason for the separate counsel is not apparent upon the record. But the fact that there are separate counsel does not change the nature of the interest of the parties themselves. The interests of defendant Beverly Parker are so intertwined with those of defendant corporation of which she is president and sole stockholder that no prejudice results from the technical defect (if it be a defect) that the corporation was not represented at the taking of the depositions. At least, defendant corporation's counsel has suggested no prejudice that has resulted. This is especially true because of the application of Evid.R. 801(D)(2) discussed above. Accordingly, the third assignment of error is not well taken.

■ Similarly, the fourth assignment of error is not well taken. This assignment of error is predicated upon statements of plaintiff's counsel during closing argument, referring to a subpoena to which defendant Beverly Parker had not responded. Although the closing argument of counsel is not included in the record on appeal, the parties do point out that the argument was on rebuttal to the closing argument of defendant corporation's counsel, who alluded to the fact that tax information was not requested. Although the manner of the comment by plaintiff's counsel may have been questionable, it was proper comment for plaintiff's counsel to point out that defendant corporation had failed to produce any documentary payroll or other business records as to the employment of Dene Parker, noting that she was paid only in cash by her mother who controlled the corporation. We find no prejudice demonstrated by defendant corporation with respect to the comments of plaintiff's counsel in response to the comments of defendant's counsel, especially in light of the fact that an objection was interposed and sustained by the trial court. The fourth assignment of error is not well taken.

The sixth assignment of error contending that there should be a reduction from the judgment for collateral benefits received by plaintiff is overruled on the authority of *Sorrell v. Thevenir* (1994), 69 Ohio St.3d 415, 633 N.E.2d 504, which ruled that R.C. 2317.45 is unconstitutional.

Defendant corporation's fifth assignment of error and plaintiff's second assignment of error raise related issues arising from the form of the special interrogatories submitted to the jury, the jury's response thereto, and the general verdict.

The jury returned a general verdict in the amount of $325,000 in favor of plaintiff Nancy Thornton and $50,000 in favor of plaintiff Tom Thornton. However, in response to interrogatories as to the various components of damages, the jury indicated that the total damages to plaintiff are $375,000. This difference is caused by interrogatory (D), which instructs the jury to "[s]tate the total amount

of compensatory damages which you find by a preponderance of the evidence Plaintiff Nancy Thornton sustained as a direct and proximate result of the auto accident of September 19, 1990." However, the instructions to this interrogatory state as follows:

"Please insert the amount you have agreed upon in answer to interrogatory (D) in the appropriate option you have marked on the general verdict form.

"The total amount listed in interrogatory (D) must equal the combined amounts listed in interrogatories (E), (F), (G) and (H)." .

The $325,000 inserted does equal the amounts listed in interrogatories (E), (F), (G) and (H), as instructed. However, there were also interrogatories (J) and (K) as to which the jury was instructed, and did, respond. By interrogatory (J), the jury found that plaintiff Nancy Thornton incurred $14,000 in "reasonable and necessary medical expense for treatment of injury proximately resulting from Defendant's negligence." By interrogatory (K), the jury found that plaintiff Nancy Thornton will incur $36,000 in "future reasonable and necessary medical expense for treatment of injury proximately resulting from Defendant's negligence." These interrogatories contain no reference to interrogatory (D). However, interrogatories (E), (F), (G) and (H) each instructed the jury to "state what portion of your answer to Interrogatory (D) is" with respect to interrogatory (E) "past damages as to pain and suffering to the plaintiff, Nancy Thornton"; with respect to interrogatory (F) "past damages reflecting Plaintiff's inability to perform usual activities"; with respect to interrogatory (G) "future damages as to pain and suffering, if any, to Plaintiff Nancy Thornton"; and as to interrogatory (H) "future damages affecting Plaintiff's inability to perform usual activities." The jury responses were $45,000, $50,000, $80,000 and $150,000, with respect to interrogatories (E), (F), (G) and (H), respectively, the sum of which is $325,000. In other words, the jury explicitly and correctly followed the court's instruction with respect to the interrogatories as to how to complete both interrogatory (D) and the general verdict. Unfortunately, the patent error in these forms omitted the special damages of medical expenses both past and future, which the jury found to be in the total amount of $50,000.

Defendant contends that it should be granted a new trial on the issue of damages because of this inconsistency between the verdict and the special interrogatories to the jury since such inconsistency "cast doubt on the legitimacy of the entire verdict on damages," so that "the only appropriate method by which damages can be recanted requires a new trial," citing Civ.R. 49(B) and *Walls v. Kemper Ins. Cos.* (Nov. 5, 1981), Franklin App. Nos. 81AP–201 and 81AP–290, unreported, 1981 WL 3580.

Civ.R. 49(B) provides:

" * * * When one or more of the answers [to interrogatories] is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial."

Thus, there are three options in the case of inconsistency between a general verdict and the jury's answers to interrogatories: (1) the court may enter judgment in accordance with interrogatories; (2) the court may return the interrogatories and general verdict to the jury for further consideration; or (3) the trial court may order a new trial. Which course to take is dependent upon the circumstances and to some extent lies within the sound discretion of the trial court. In *Kemper Ins. Cos.*, this court held that the trial court should enter judgment in accordance with answers to interrogatories inconsistent with the general verdict only when "it is absolutely clear that the answers to the interrogatories require a certain result." In this case, it is absolutely clear that the general verdict should be no less than $325,000 since this is not only the amount entered in the general verdict but, also, is the sum of the answers to four of the six special interrogatories, which the jury was directed to answer. In other words, defendant is not entitled to a new trial on the issue of damages because the jury interrogatories clearly indicate that the jury found the general verdict should be at least $325,000. The fifth assignment of error is not well taken.

There remains, however, the question of whether the jury found the total judgment should be greater than $325,000, despite this being the amount indicated in the general verdict. By her second assignment of error, plaintiff contends that the judgment should be entered in accordance with the sum of all of the responses to the six special interrogatories as to the various elements of damages, so that the judgment should be for $375,000, rather than only $325,000. In overruling plaintiff's motion for relief from judgment or judgment notwithstanding the verdict, the trial court stated that "the jury followed the instructions contained in the interrogatories literally to the letter" and that:

"All of this was accomplished without objection by the plaintiffs or defendants, either before submission of the interrogatories or after the return of the verdict. * * * The resulting answers to the interrogatories and general verdict conformed to the instructions given without objection. In her reply brief, plaintiff concedes that the jury did follow the instructions given. Therefore, plaintiff's Motion for Relief from Judgment or, in the alternative, Motion for Judgment Notwithstanding the Verdict is *OVERRULED*."

■ However, the provisions of Civ.R. 49(B) apply to inconsistencies between the general verdict and the interrogatories, not inconsistencies between the interrogatories, the issue upon which the trial court focused. There is nothing in the general verdict itself instructing the jury not to include damages for past and future medical expenses in the general verdict. Rather, the error occurred only with respect to interrogatory (D) and the instructions to enter the amount inserted in response to interrogatory (D) on the general verdict form.

■ In its charge to the jury, the trial court did not outline the instructions for answering either the interrogatories or the general verdict but, instead, stated:

"In addition to the verdict forms and exhibits, you will also have with you a set of written questions that you are to answer. These written questions, known as jury interrogatories, deal with the factual issues that I've previously outlined. You are to follow the instructions on the interrogatories, and, quite frankly, they lead you right to what you need to do. These instructions following each question will tell you how to proceed depending upon your answer to each of the interrogatories.  * * *

"  *  *  *

"The general verdict form lists a number of possible options. Which options you choose will depend upon the facts as you determine them to be and your answers to the interrogatories."

However, earlier, the trial court had instructed the jury that:

"In determining damages, you may consider the nature and extent of the injury, the effect upon physical health, the physical pain, suffering, and mental anguish, if any, that plaintiff, Nancy Thornton, has endured, the ability or inability to perform usual activities, whether any disability has resulted there-from, and the reasonable cost of necessary medical and hospital expenses incurred by the plaintiff. From these, you will determine what sum will compensate the plaintiff for the injuries to date.

"You will also note that plaintiff claims that some of her injuries are permanent and that she will incur medical expenses in the future. As to such claims, no damage may be found, except that which is reasonably certain to exist in the future as a proximate result of defendant's conduct. Regarding permanent or future damages, you are not to speculate.  * * *

"If you find from a preponderance of the evidence that as a proximate cause of the injuries sustained, the defendant [*sic* ] has suffered a permanent disability * * * you may consider and make a separate award for such damages.

"Any amounts that you have determined will be awarded to plaintiff for any element of damages shall not be considered again or added to any other element of damages.

" * * * For example, any amount of damages awarded to plaintiff for pain and suffering must not be awarded again as an element of the damages for her inability to perform usual activities."

The fact that the jury followed the trial court's instructions, both those in the general charge and those in the interrogatories, is not determinative. There is a patent inconsistency between the general charge to the jury and the instructions set forth in the interrogatories. The trial court gave both in writing to the jury. In other words, the same inconsistency between the general verdict and the interrogatories exists between the charge to the jury and the interrogatories.

Reviewing the jury's responses to the interrogatories, it is patently clear that the jury intended to award plaintiff $45,000 for past damages as to pain and suffering, $50,000 as to past damages reflecting plaintiff's inability to perform usual activities, $80,000 for future damages as to pain and suffering, $150,000 as to future damages for plaintiff's inability to perform usual activities, $14,000 for previously incurred reasonable and necessary medical expenses, and $36,000 for future reasonable and necessary medical expenses. This totals $375,000, rather than the $325,000 amount inserted on the general verdict form by the jury. If the general verdict had been consistent with the general charge of the trial court to the jury, the amount of $375,000 would have been inserted by the jury. Instead, the jury inserted the amount of the response to interrogatory (D) as the general verdict because the instructions to that interrogatory, as well as the instructions to interrogatory (C), instruct the jury to insert the answer to interrogatory (D) on the general verdict form. In short, it is patently clear that the jury intended to award total damages in the amount of $375,000 to plaintiff, rather than the $325,000 erroneously inserted on the general verdict form because of the confusing instructions set forth in the interrogatories. As a result, the jury made no award for either past or future medical expenses, even though they found $50,000 of such expense. Plaintiff is entitled to the full amount awarded by the jury rather than only the part which was inserted on the general verdict form because of the confusion. This is appropriately raised by a motion for judgment notwithstanding the verdict, not a motion for correction of a clerical error under Civ.R. 60(A). The trial court erred in failing to enter judgment for the correct amount since it is absolutely clear that the general verdict reflected an amount $50,000 less than the amount the jury intended to award, as is absolutely clear from the responses to the interrogatories. The trial court erred in overruling the motion for judgment notwithstanding the verdict so as to

correct the amount of the judgment to $375,000. Plaintiff's second assignment of error is well taken.

By her first assignment of error, plaintiff contends that the trial court erred when it held that the physician-patient privilege applies to physicians hired for defense medical actions. We find no error. The discovery sought by plaintiffs involved not a medical examination of plaintiff but, rather, medical examinations of third parties unrelated to this action. What was sought by plaintiff was the doctor's appointment calendar for a three-month period with the names of the patients being redacted, together with a copy of any letter or written report the doctor had sent to any lawyer or insurance company with respect to any medical examination conducted during the same three-month period. Plaintiff contends that the very nature of a medical examination conducted at the request of the defense in litigation or in preparation for litigation removes the physician-patient privilege of R.C. 2317.02. Even assuming, as plaintiff contends, that the privacy rights of third parties could be protected by redaction of their names or that the trial court could have imposed additional restrictions, we find no abuse of discretion on the part of the trial court.

Although plaintiff is entitled to attempt to show bias on the part of the doctor by showing that he finds no injury in the great majority of examinations made upon request of defense counsel, this does not justify obtaining the appointment times and medical reports as a result of examinations with respect to third-party patients even if their names are redacted. Furthermore, and most important, plaintiff has demonstrated no prejudice. The jury found in favor of plaintiff upon the salient issues of liability, indicating that the jury did not accept the opinion of the defense physician expert, so that there was no further need to impeach his testimony. Accordingly, plaintiff's first assignment of error is not well taken.

For the foregoing reasons, all six of defendant's assignments of error and plaintiff's first assignment of error are overruled, but plaintiff's second assignment of error is sustained. The judgment of the Franklin County Court of Common Pleas is reversed as to the amount of damages but otherwise is affirmed, and this cause is remanded to that court with instructions to sustain plaintiff's motion for judgment notwithstanding the verdict and to enter judgment for plaintiff in the total amount found by the jury as damages, namely $375,000, and for such other proceedings as may be in accordance with law consistent with this opinion. Costs are assessed against defendant ZZCP, Inc.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded with instructions.*

BOWMAN and CLOSE, JJ., concur.