DECISION AND JUDGMENT ENTRY
This is an appeal from a Ross County Common Pleas Court judgment, upon a bench trial, in favor of Lewis D. Thomas, Jr., plaintiff below and appellee herein, on his claims against Carol Aquino, defendant below and appellant herein, and against appellant on her counterclaims. The following error is assigned for our review:
 "THE JUDGMENT OF THE TRIAL COURT THAT IT COULD NOT DETERMINE THE TERMS OF THE PARTIES' AGREEMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]"
The record reveals the following facts pertinent to this appeal. Appellee is a residential contractor and an owner in "L 
M Thomas Concrete." He met appellant in 1985 and they began dating the following year. A child, Tuesday Marie Thomas (d.o.b. 6-22-90), was born during the course of that liaison.
Appellant commenced a parentage action in 1991 alleging that appellee was the father of the minor child. Subsequent DNA analysis revealed a 99.86% probability of paternity and, on October 22, 1992, appellee entered into a consent judgment wherein he agreed to pay $300 per month in child support for his daughter. He also agreed, inter alia, to make a lump sum payment to appellant in the amount of $12,000 and to assist her in building a house by providing "$6,000 worth of labor, figured at the usual and customary Ross County, Ohio, residential scale, plus [provide a] $2,000 credit towards a heating and air conditioning unit" to be installed at the residence.
Appellant purchased three (3) lots of real property in a Chillicothe subdivision and decided that she wanted to build a "pre-packaged" "stick" house, known as the "Sheffield," that she saw in a brochure offered by Carter Lumber. It was recommended that she make some changes from the brochure, such as expanding the dimensions of the home and installing a basement, in order to give the house a better resale value. She agreed and appellee began working on the home in December of 1992.
By the time the sewer lines had been laid and the basement was almost completed, appellee calculated that he had fulfilled his obligation to provide $6,000 worth of labor pursuant to the consent decree in the parentage action.[1] The parties then agreed that appellee would complete the house and would also finance the remaining construction. There was never any written construction contract between them but, on April 2, 1993, appellant executed a promissory note to appellee in the amount of $40,000, payable on demand, with interest at the rate of eight percent (8%) per annum payable on a biennial basis. Contemporaneously, she also executed and delivered a mortgage deed to secure payment of that debt. The mortgage was filed for record on April 29, 1993, and gave appellee a first and best lien in the premises. On May 4, 1993, appellant executed a second promissory note to appellee in the amount of $5,500, also payable on demand with eight percent (8%) biennial interest payments, to cover additional costs incurred with building the house as well as a cash loan of $500. The house was eventually completed and appellant moved in during the spring of 1993. No payments were ever made on either of the two (2) promissory notes.
Appellee commenced the action below on August 19, 1997, alleging default on the notes and further averring that the outstanding balances had grown to $64,227.32. He asked for judgment in that amount, plus interest, as well as foreclosure of the mortgage lien he held on the property.
Appellant filed an answer and admitted that she executed the notes and mortgage, but otherwise denied liability. She further asserted a variety of affirmative defenses including fraud, statute of frauds and failure of consideration. Appellant further counterclaimed and asserted that appellee had breached their construction agreement by not building the residence in a "workmanlike manner" and that he had fraudulently induced her to sign the notes and mortgage. A reply was filed by appellee denying those allegations.
The matter came on for a bench trial on December 29, 1998, at which time the parties agreed that appellee had complied with the terms of the 1992 Parentage Decree by paying appellant $12,000, by providing $6,000 in labor to construct the basement and to lay the sewer line, and by paying "D. L. Gumm" $2,000 to install a heat pump on the premises. It was also uncontroverted that the parties had reached an agreement whereby appellee would complete the house and that this would necessitate roughly $40,000 in additional materials and labor. There was never any question that appellant executed the notes and mortgage to appellee and there was no dispute that she failed to make any payments on the debt.
What was in dispute, however, was the actual amount to which appellee was entitled. Dennis Jones, the owner/operator of Ace Builders, testified that he was asked to perform an inspection of the house and found various conditions that needed to be "remedied." The witness opined that it would cost roughly $14,882.20 to make the necessary repairs. Appellant also argued that the house was not worth the $60,000 that had allegedly been invested in its construction. She testified that various aspects of the house were not completed to her satisfaction and, on cross-examination, appellee admitted that he was unable to document the precise labor and material costs that had been put into the building.[2]
On February 12, 1999, the trial court issued its findings of fact and conclusions of law ruling in favor of appellee on all counts. The court determined that appellee had fulfilled his obligations under the 1992 Parentage Decree, that he agreed to continue construction of the house and that he agreed to finance such construction. It was further determined that appellant had executed and delivered valid promissory notes to pay for the construction as well as a mortgage to secure payment of that debt. No payments were ever made on the notes and the court found that appellee was entitled to judgment in his favor in the amount of $64,227.32, plus interest, as well as foreclosure of his security interest. Insofar as the counterclaims were concerned, the court ruled that appellant "failed to prove" that she was entitled to relief either in tort (i.e. fraudulent inducement) or breach of contract. The court found that "there was not a preponderance of evidence to indicate that [appellee] did not complete the verbal construction [contract] . . . since the [c]ourt cannot determine by a preponderance of the evidence whatthe terms were." (Emphasis added.) It was also determined that appellant had failed to prove that the residence was not constructed in a "workmanlike" manner. Judgment to that effect was entered on March 4, 1999, and this appeal followed.
We note at the outset of our analysis that this case involved several different contractual arrangements. There was the oral construction contract whereby appellee agreed to complete construction of the home for $40,000 and there was the financing arrangement (evidenced by both the notes and the mortgage) whereby appellant agreed to loan the funds to complete construction in exchange for repayment of those monies plus eight percent (8%) interest. Appellant challenged the validity or performance of both contracts during the proceedings below. On appeal, however, she limits her argument solely to the trial court's interpretation of the construction contract. In particular, she directs our attention to that portion of the findings of fact and conclusions of law wherein the court ruled that it could not determine the terms of their contract. Appellant argues that this ruling is against the manifest weight of the evidence that was introduced below. We disagree.
A judgment will not be reversed as being against the manifest weight of the evidence so long as it is supported by some competent and credible evidence. Gerijo, Inc. v. Fairfield
(1994), 70 Ohio St.3d 223, 226, 638 N.E.2d 533, 536; Vogel v.Wells (1991), 57 Ohio St.3d 91, 96, 566 N.E.2d 154, 159; C.E.Morris Co. v. Foley Construction Co. (1978) 54 Ohio St.2d 279,376 N.E.2d 578, at the syllabus. This is a difficult standard to meet and appellant has not persuaded us that she has met the standard in the instant case. Appellant appears to misinterpret the trial court's decision as a ruling that it could not determine any terms of the contract rather than simply stating an inability to determine specific terms. There is, to be sure, evidence that some broad based agreement existed between the parties. Both sides discussed major points of their agreement such as the dimensions of the house and the cost to complete construction. However, we do not interpret the trial court's finding as a ruling that no contract existed; rather, the trial court could not determine specific terms of the contract. Appellant and Mr. Jones both gave substantial testimony that the house was not properly completed. The problem, though, is that neither side ever directly testified as to the individual specifications so that the trial court could measure and gauge the propriety of that construction. In the absence of such testimony, we too are unable to determine the terms of the contract and whether appellee substantially complied with those terms.
Appellant also cites us to the uncontroverted testimony of Mr. Jones concerning the cost of repairing the house and argues that the trial court erred in rejecting her claim that the structure was not completed in a workmanlike manner. Again, we disagree. It is well settled law that weight of the evidence and the credibility of witnesses are issues for the trier of fact. SeeState v. Frazier (1995), 73 Ohio St.3d 323, 339; 652 N.E.2d 1000,1014; State v. Rojas (1992), 64 Ohio St.3d 131, 139;592 N.E.2d 1376, 1384; State v. DeHass (1968), 10 Ohio St.2d 230,277 N.E.2d 212, at paragraph one of the syllabus. The trial court, as trier of fact, was in a better position than this Court to view the witnesses and observe their demeanor, gestures and voice inflections, and to use those observations in weighing witness credibility. See Myers v. Garson (1993), 66 Ohio St.3d 610, 615,614 N.E.2d 742, 745; Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80, 461 N.E.2d 1273, 1276. The trial court was free to believe all, part or none of the testimony of each witness who appeared before it. Rogers v. Hill (1998), 124 Ohio App.3d 468,470, 706 N.E.2d 438, 439; Thornton v. Parker (1995), 100 Ohio App.3d 743,751, 654 N.E.2d 1282, 1287; State v. Nichols (1993),85 Ohio App.3d 65, 76, 619 N.E.2d 80, 88. The mere fact that testimony is uncontroverted does not, ipso facto, require the trier of fact to accept an argument which is found to lack credibility. GTE North. Inc. v. Carr (1993), 84 Ohio App.3d 776,780, 618 N.E.2d 249, 251, at fn. 3; State v. Caldwell (1992),79 Ohio App.3d 667, 680, 607 N.E.2d 1096, 1105. In this case, the trial court apparently placed little weight on the testimony given by Mr. Jones. This was well within its province as trier of fact and we discern no error in that decision.
For all these reasons, the assignment of error is overruled and the judgment of the trial court is affirmed.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Evans, J.: Concur in Judgment Opinion
For the Court
 BY: ______________________ JUDGE PETER B. ABELE
[1] Appellee had already paid $12,000 to appellant directly (which sum had apparently been used to purchase construction materials) and then paid $2,000 to a contractor for installation of a heat pump. These payments, in addition to the work performed, would have satisfied the terms of the consent decree.
[2] Appellant also testified that appellee had misrepresented to her that the notes were "never to be called on." She went on to explain that the transaction had been structured as a "protection plan" for the benefit of their child whereby "the money would never go back to him and the equity in the home would eventually be eaten up by the loan, so therefore, it would be turned over to the daughter." Appellant somewhat contradicted this explanation in later testimony when she recounted plans to "refinance the mortgage" and pay-off the loan.
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.