HANSON, APPELLEE, *v.* KYNAST ET AL.; ASHLAND UNIVERSITY, INC., APPELLANT.

[Cite as Hanson *v.* Kynast (1986), 24 Ohio St. 3d 171.]

(No. 85-1126—Decided July 2, 1986.)

*Brown, Bemiller, Murray & McIntyre* and *Jeffrey L. Molyet,* for appellee.

*Gongwer, Shafer & Auten* and *Philip H. Shafer,* for appellant.

PARRINO, J. The first issue to be decided is whether the relationship of principal and agent existed between Kynast and Ashland. Because of the absence of proof as to the existence of a principal-agent relationship, the trial court essentially found as a matter of law that Ashland was not bound by Kynast's conduct under the doctrine of *respondeat superior.*[4] We agree.

This court has held that the relationship of principal and agent or master and servant exists only when one party exercises the right of control over the actions of another, and those actions are directed toward the attainment of an objective which the former seeks. *Baird* v. *Sickler* (1982), 69 Ohio St. 2d 652, 654 [23 O.O.3d 532]; *Councell* v. *Douglas* (1955), 163 Ohio St. 292 [56 O.O. 262]; *Bobik* v. *Indus. Comm.* (1946), 146 Ohio St. 187, 191-192 [32 O.O. 167]; see, also, Restatement of the Law 2d, Agency (1958) 7, Section 1. Therefore, a principal-agent relationship can be found in the instant case only if Kynast was under the control of Ashland, and if he took some action directed toward the attainment of Ashland's objective.

In order to make this determination we must examine the relevant documentary evidence produced before the trial court. A review of the evidence reveals that William Kynast expressed an interest in Ashland when he was in high school. He requested and received written information from the university and he spoke with Ashland lacrosse coach Dick Fahrney. In his deposition Kynast testified that he chose Ashland because it had a good business school, he could live away from home, and he would be able to play lacrosse. He also testified that no promises were made to him by any Ashland official to induce him to attend the university.

---

[4] In order to establish a claim under the doctrine of *respondeat superior,* it must be demonstrated that a principal-agent relationship existed, and that tortious conduct was committed by the agent while in the scope of his agency. *Baird* v. *Sickler* (1982), 69 Ohio St. 2d 652 [23 O.O.3d 532].

Kynast attended Ashland for three semesters, starting in August 1981. He financed his education through bank loans and with the assistance of his parents. While at Ashland, Kynast decided to play lacrosse; however, he was never obligated to play lacrosse for the university. In addition, Kynast did not receive a scholarship, he used his own equipment while playing, and he was not compensated for his participation.

Lacrosse was instituted at Ashland in an effort to meet the needs of students, especially those coming from the East Coast where lacrosse is a popular sport. Ashland provides a coach and the players are each given a game shirt which displays the university's name. The players also received free transportation to games at other schools, and on one occasion while Kynast played for Ashland, they received overnight lodging on a road trip. No admission fee is charged at the home games.

This court is of the opinion that this relationship between Kynast and Ashland is a relationship common to many students attending universities. A university offers a diversified educational experience which includes classroom instruction in a great variety of subjects as well as optional participation in events such as school clubs, and intramural and intercollegiate sports. All of these offerings are designed to expand and enrich a student's overall educational experience. Students evaluate and determine which university best meets their needs, and then pay a fee to attend that university. The relationship formed under these conditions has previously been characterized as contractual. *Zumbrun* v. *U.C.L.A.* (1972), 25 Cal. App. 3d 1, 10, 101 Cal. Rptr. 499, 502. The student pays a fee and agrees to abide by the university rules. In exchange, the university provides the student with a worthwhile education.

This relationship does not constitute a principal-agent relationship. The student is a buyer of education rather than an agent. Restatement of the Law 2d, Agency (1958) 73, Section 14 J, states that a buyer retains goods primarily for his own benefit, while an agent is one who retains goods primarily for the benefit of the one who delivers those goods. In the instant case, the "goods" to be delivered is an education and the university delivers that education to the student for a fee. It is clear that a student retains the benefit of that education for himself rather than for the university.

Our conclusion that a student is not an agent of a university is supported by *Johnson* v. *Central Aviation Corp.* (1951), 103 Cal. App. 2d 102, 229 P. 2d 114. In *Johnson*, defendant Bruce Gross contracted for a course of instruction in the theory and practice of airplane flight from Central Aviation Corp. The plaintiffs suffered damages when Gross, while taxiing a plane for inspection, collided with the plaintiffs' airplane. The plaintiffs sought to hold Central Aviation Corp. liable for the negligent acts of its student, Gross, under the doctrine of *respondeat superior*. The court rejected the plaintiffs' theory holding: "* * * As a student taking instruction

he [Gross] was neither the servant nor agent of the flying school while doing those things properly within his course of instruction. * * *" *Id.* at 111.

In summary, the relationship discussed above constitutes a contractual one between the student and his university. The university is selling and the student is buying an education, and the formation of a principal-agent relationship was not intended, nor was one established, between the parties.

The appellee, however, maintains that Kynast's participation in lacrosse converted his status from the usual university-student relationship to that of principal-agent due to the control exercised by the lacrosse coach over Kynast, and because his participation in lacrosse resulted in beneficial publicity for Ashland. We disagree. In applying the law of agency to the facts of this case, we must conclude that Kynast was not controlled by Ashland, and that he was not playing the game for the school's benefit.

The degree of control necessary to establish agency has not been clearly defined. See, *e.g.,* Restatement of the Law 2d, Agency (1958) 485, Section 220. Instead, courts have generally examined various factors in determining whether the requisite amount of control exists. One such factor is whether the individual is performing in the course of the principal's business rather than in some ancillary capacity. See *Avis Rent A Car System* v. *United States* (C.A. 2, 1974), 503 F. 2d 423, 429. In the case at bar, Kynast was not performing in the course of the principal's business, *i.e.,* he was not educating students. On the contrary, he was participating in one of the educationally related opportunities offered by the university. Another factor to be considered is whether the individual was receiving any compensation from the principal. See *Youngblood* v. *Morrison Grain Co.* (D. La. 1978), 467 F. Supp. 758, 761, affirmed (C.A. 5, 1979), 591 F. 2d 1207. It is undisputed that Kynast was never compensated for playing on the Ashland lacrosse team. A third factor is whether the principal supplied the tools and the place of work in the normal course of the relationship. *Gradler* v. *Prudential Property & Cas. Ins. Co.* (D. Pa. 1979), 464 F. Supp. 575, 578; *Mav Freight Serv., Inc.* v. *United States* (D.N.Y. 1978), 462 F. Supp. 503, 507. Kynast supplied his own equipment in order to play lacrosse. The university did, however, provide the playing field.[5]

A review of these factors clearly shows that Kynast was not controlled by Ashland for the purpose of establishing an agency relationship. The

---

[5] Several other factors have been considered in examining whether a principal-agent relationship exists. Such factors include: (1) whether the individual offers his service to the public at large or to one individual at a time, *Bonney Motor Express, Inc.* v. *United States* (D. Va. 1962), 206 F. Supp. 22; (2) the length of employment, *Mav Freight Serv., Inc.* v. *United States* (D.N.Y. 1978), 462 F. Supp. 503; and (3) the right to terminate the employee at will, *Gradler* v. *Prudential Property & Cas. Co.* (D.Pa 1979), 464 F. Supp. 575. As these factors have no applicability to the facts of the case at bar, they need not be discussed.

control exerted over Kynast by the university, *i.e.*, the Ashland coach running the lacrosse team, was merely incidental to the educational opportunity in which Kynast *voluntarily* participated. A limited amount of control is necessary to assure that each student is afforded a fair opportunity to benefit from the activity. The athletic guidance that was exercised by Ashland in this case does not satisfy the control element required to establish agency.

Further, the documentary evidence considered in determining appellee's motion for summary judgment clearly establishes that Kynast's activity was not directed toward the attainment of an objective by Ashland. Lacrosse at Ashland is not an income-producing sport. In fact, as previously noted, an admission fee is not charged to attend the games. The evidence established that Ashland initiated lacrosse for the benefit of the students wishing to play that game; it is simply one of the many educational opportunities offered to any Ashland student.

The appellee's claim that Ashland derived a benefit through the publicity the team generated is not persuasive. In *Toms* v. *Delta Savings & Loan Assn.* (1955), 162 Ohio St. 513 [55 O.O. 413], paragraph three of the syllabus, this court specifically held that an agency relationship is not established between a savings and loan company and a softball player, even though the savings and loan company sponsored the softball team for publicity and provided the team with uniforms bearing the company's name. See, also, *Rogers* v. *Allis-Chalmers Mfg. Co.* (1950), 153 Ohio St. 513 [41 O.O. 514] (a company-sponsored golf team did not create an agency relationship between the company and the voluntary participants in the activity). In the instant case, there is no evidence that Ashland derived a benefit from publicity; nor is there evidence that Kynast participated in lacrosse so that Ashland could benefit from publicity. Kynast engaged in lacrosse voluntarily, and for *his own* enjoyment. Under such a circumstance no agency relationship is created.

To summarize, we conclude that a student who attends a university of his choice, receives no scholarship or compensation, voluntarily becomes a member of the university lacrosse team that engages in intercollegiate contests with other universities for which games no attendance fee is charged, who purchases his own equipment and who receives instructions from a coach while preparing for and playing such games, but is not otherwise controlled by the coach, and who participates in the game as a part of his total educational experience while attending school, is not the agent of the university at the time he is playing the game of lacrosse. Thus, appellee's claim that Ashland was liable for Kynast's wrongful acts through the doctrine of *respondeat superior* was properly rejected and the trial court properly entered summary judgment for appellant on this issue.

The second and final issue to be resolved is whether the trial court properly entered summary judgment for Ashland upon Hanson's claims that Ashland was negligent for failing to have an ambulance and medical

personnel at the game, and for permitting an illegally parked car to block the playing field's entrance. The appellee maintains that such negligence resulted in the delay of his treatment.

In order to successfully establish negligence, the appellee must prove the existence of the following elements: (1) a duty owed by Ashland to Hanson, (2) a breach of this duty by Ashland, and (3) that Hanson's injuries were a proximate result of Ashland's conduct. *Strother* v. *Hutchinson* (1981), 67 Ohio St. 2d 282, 285 [21 O.O.3d 177]; *Feldman* v. *Howard* (1967), 10 Ohio St. 2d 189, 193 [39 O.O.2d 228]. It is unnecessary at this time to consider whether genuine issues of fact existed as to the first two elements of negligence for the reason that the uncontradicted evidence submitted by Ashland established that no damages proximately resulted from Ashland's alleged wrongdoing.

Submitted in support of Ashland's motion for summary judgment was an affidavit from Dr. Thomas L. Strachan stating that Hanson's injury was sustained at the moment that his head hit the ground. Dr. Strachan further stated that there was no evidence of neurological deterioration subsequent to impact; in other words, Hanson did not suffer additional injury as a proximate result of any delay in treatment. The trial court granted Hanson a continuance of ninety days for the purpose of conducting additional discovery. This gave appellant the opportunity to find and offer expert testimony refuting Dr. Strachan's opinion. Hanson did not produce that evidence; hence, Dr. Strachan's opinion is unrebutted.

One of the elements necessary to establish negligence was not present; therefore, as a matter of law, the trial court properly granted Ashland's motion for summary judgment on Hanson's claim of negligence.

Accordingly, the judgment of the court of appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C.J., LOCHER, HOLMES, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.

LOCHER, HOLMES, DOUGLAS and WRIGHT, JJ., concur separately.

PARRINO, J., of the Eighth Appellate District, sitting for SWEENEY, J.

HOLMES, J., concurring. I fully agree with the majority's conclusions that Ashland University is not liable for Hanson's injuries through the doctrine of *respondeat superior,* and that the trial court otherwise acted appropriately in granting summary judgment for appellant. I write separately to emphasize that, in my view, the majority's reasoning and syllabus relating to the agency issue are much narrower in scope than need be.

An agency relation exists "only if there has been a manifestation by the principal to the agent that the agent may act on his account, and con-

sent by the agent so to act." Restatement of the Law 2d, Agency (1958) 82, Section 15. There was simply no evidence that Ashland intended Kynast to have responsibility to act on its behalf, or that Kynast consented so to act. Additionally, "[i]t is the element of continuous subjection to the will of the principal which distinguishes the agent from other fiduciaries and the agency agreement from other agreements." *Id.* at 9, Section 1, Comment *b.* In the case *sub judice,* there was no such continuous subjection of Kynast by Ashland. Although the cases which the majority cites for this proposition all deal with specific actions by one party, which the other party directs or controls, and which also are directed towards the attainment of an objective sought by the latter: *Baird* v. *Sickler* (1982), 69 Ohio St. 2d 652, at 654 [23 O.O.3d 532] (inserting a tube, by a nurse assisting and being supervised by a doctor); *Councell* v. *Douglas* (1955), 163 Ohio St. 292 [56 O.O. 262] (driving the owner's car upon his request); *Bobik* v. *Indus. Comm.* (1946), 146 Ohio St. 187, at 191-192 [32 O.O. 167] (driving a truck at the direction of the procurer of trucking services), the majority does not discuss the actions of Kynast over which Ashland has, or does not have, control, let alone by which the school benefits. While the school may instruct its athletes as to the rules of a game, general game plan and certain plays, it certainly cannot control all of the athletes' movements, such as where, when, and how to run or throw, in the manner a doctor can in assisting a nurse, or a vehicle owner in directing the driver. Ashland clearly had no control over Kynast's actions which resulted in the tragic injuries to Hanson.

This case presents no evidence that any of Kynast's actions were in furtherance of Ashland's objectives. Even if the school would earn money by charging an admission fee to its athletic events, unlike the case at bar, the school would be benefiting itself by its own actions—the school's athletes would not charge the fee. Kynast and other school athletes play for their own entertainment, education and benefit; any benefit to the school by its displaying good talent, winning a game, etc., would merely be collateral. If such incidental benefits did occur, this does not establish a principal-agent relationship between school and athlete where the athlete's actions are not under the school's control and the athletes have not been asked and have not agreed to act on the school's behalf.

An agency relationship is created "if, but only if, there is an understanding between the parties which, as interpreted by the court, creates a fiduciary relation in which the fiduciary is subject to the directions of the one on whose account he acts." Restatement, *supra,* at 9, Section 1, Comment *b.* Such an understanding, like any contract—express or implied—is a product of a meeting of the minds. 35 Ohio Jurisprudence 2d (1959) 629, Master and Servant, Section 8. Any understanding between a school and prospective or current athletes—even one which, unlike the instant situation, provides inducements such as scholarships, extensive facilities and equipment, etc.—is purely gratuitous in the sense that,

generally, either party may end its participation at any time without liability. It seems that, in the typical situation, an athlete could drop out of school or off the team, a school could stop paying for team jerseys or transportation to games, etc., all without legal liability for breach of a nonexistent agreement. Each would be free to act for his or its own benefit and confer benefits on the other without being legally required to continue doing so.

An important question is whether the services of an alleged agent have been performed according to a contract. 3 Ohio Jurisprudence 3d (1978) 184, Agency, Section 119. In situations of student athletes playing for schools, it may generally be found that there is no contractual relationship and, thus, no principal-servant relationship. At least one court has come to the same conclusion by holding that a high school board cannot be liable on a theory of *respondeat superior* for tortious acts of one of its high school basketball team players. *Fustin* v. *Bd. of Edn. of Comm. Unit Dist. No. 2* (1968), 101 Ill. App. 2d 113, 242 N.E. 2d 308.

By specifically including so many factual conditions in its syllabus law that a student is not an agent of the university, the majority opinion may give the impression that such facts have a legal significance which they do not actually have. In my view, there would be no principal-agent relationship established between these two parties merely upon the finding of any or all of the following conditions: (1) the student receives a scholarship from, or is recruited by, the university; (2) the university charges an attendance fee for the athletic event; (3) the university purchases equipment and uniforms for the student athletes; and (4) any other gratuitous benefit is conferred on the student by the school. If it would be otherwise, many of Ohio's colleges and universities may be subject to litigation emanating from their sports activities, particularly that of football.

In order to state a cause of action against a university for injuries caused by one of its athletes, one must, at the very least, allege negligent supervision, such as allowing a student with a known propensity towards violence to play or allowing a team to play when there is a total absence of management, or the athlete must be paid compensation for his services in such a way as to create a contract between the athlete and university. The pleadings here are not broad enough to include any such allegations, such allegations were not argued before the trial or appellate court, and no evidence was produced from which reasonable minds could conclude that there was a lack of supervision or known dangerous propensities on the part of Kynast. Thus, summary judgment was appropriate.

LOCHER, DOUGLAS and WRIGHT, JJ., concur in the foregoing concurring opinion.