OPINION
Appellant Tina Butts appeals from the Columbiana County Common Pleas Court's affirmation of an administrative decision that denied her unemployment benefits. For the following reasons, the trial court's judgment is affirmed.
In 1992, appellant worked on a health study grant for the City of East Liverpool ("the City"). After this grant's termination in 1994, appellant's position ended, and she collected unemployment compensation. Thereafter, the Department of Housing and Urban Development ("HUD") awarded funds to the Ohio Department of Health ("ODH") for distribution to Ohio cities in the form of lead-based paint abatement grants. As such, ODH awarded approximately $1,322,000 to the City to be administered by the City's Health Department. The City had to match the award in an amount totaling ten percent of the entire grant; this match could contain cash or in-kind services. Thus, the City supplied the space and the supplies necessary to run an office for the grant program.
The Health Department desired to hire appellant as the "registered sanitarian/abatement coordinator" who would plan and implement a lead-based paint abatement program pursuant to the grant's terms. Because the Health Department wanted the City to avoid having to pay unemployment compensation when appellant discontinued her services, the City's Board of Health entered into contracts with appellant which specified that she would provide services as an independent contractor. Appellant preferred to be an employee rather than an independent contractor but she relented and signed the contracts.
The first contract was for six months and paid appellant $19.74 per hour for a forty hour work week. Appellant was responsible for paying her own benefits such as income taxes, Medicare, health insurance, life insurance, worker's compensation, and retirement. When this contract ended, a new one year contract was entered which contained most of the same provisions. The main differences were that now appellant would get paid holidays and vacation time and she would now receive $21.64 per hour. In formulating this hourly wage, it appears that the Board of Health utilized an itemization submitted by appellant's co-worker who was also paid $21.64 per hour. The items used to formulate this final hourly wage were a base hourly wage of $13.00 plus the cost of paying for health insurance, life insurance, Medicare, worker's compensation coverage, a car allowance, and unemployment compensation coverage.
The second contract ended on September 30, 1996, after which appellant filed for unemployment compensation with the Ohio Bureau of Employment Services ("OBES"). On October 18, 1996, appellant's application for unemployment benefits was denied due to insufficient qualifying weeks in covered employment. Her motion for reconsideration was denied. Appellant then filed a timely appeal to the Unemployment Compensation Board of Review. In early 1997, hearings were conducted by a Board of Review hearing officer. Thereafter, the hearing officer affirmed the decision of OBES, stating that the services rendered by appellant did not constitute covered employment because the greater weight of the evidence established that she was an independent contractor rather than an employee of the City. Appellant's timely application to institute further appeal in front of the Board of Review was disallowed. She then appealed to the Columbiana County Common Pleas Court which affirmed the Board of Review's determination in January 1998. The within appeal followed.
Pursuant to R.C. 4141.28 (0), the standard used by reviewing courts to evaluate a decision by the Board of Review is whether such decision is unlawful, unreasonable or against the manifest weight of the evidence. Tzangas, Plakas Mannos v. Ohio Bur. ofEmp. Serv. (1995), 73 Ohio St.3d 694, 696-97. Reviewing courts must determine if the Board of Review's decision is supported by the evidence in the record, but the reviewing courts shall not make factual findings or evaluate witness credibility. Id citingIrvine v. Unemp. Comp. Bd. of Rev. (1985), 19 Ohio St.3d 15,17-18. "The fact that reasonable minds might reach different conclusions is not a basis for the reversal of the board's decision." Id.
Appellant's sole argument is that the decisions below incorrectly held that she was an independent contractor rather than an employee who is entitled to unemployment benefits. In order to collect unemployment, a claimant must have worked in covered employment for a specified number of weeks and have discontinued working for just cause. Accordingly, the only issue in the case at bar is whether appellant's position constituted covered employment.
We begin our analysis with R.C. 4141.01 (the definition section of the unemployment compensation statutes) which states in relevant part:
"(B) (1) "Employment" means:
* * *.
 (b) Services performed by an individual for remuneration unless it is shown to the satisfaction of the administrator that such individual:
 (i) Has been and will continue to be free from control or direction over the performance of such service, both under a contract of service and in fact;
 (ii) That such service is outside the usual course of the business for which service is performed; and
 (iii) That such individual is customarily engaged in an independently established trade, occupation, profession, or business."
Appellant contends that this three-part test used to exclude workers from eligibility has not been satisfied. That is, appellant claims that the services she provided were not outside the scope of the City's usual business. Therefore, she concludes, the second prong of the three-part test set forth in R.C. 4141.01
(B) (1) (b) has not been satisfied. This contention by appellant, however, ignores certain factors which are supportive of a contrary conclusion. For example, appellant admitted that when she previously worked as a City employee on a different grant, she was required to work on projects for the City's Health Department other than the grant itself. Conversely, as an abatement coordinator, appellant solely worked on the lead abatement grant and she was not required to perform services usually performed by the City's Health Department. Furthermore, this lead abatement program operates on limited funds from the federal and state governments in the form of a specific grant to be used for providing services that the City may not have otherwise provided. Thus, we conclude that reasonable minds could find that appellant's service of coordinating the abatement of lead-based paint is not inside the usual course of the City's business.
Appellant also contends that under R.C. 4141.01 (B) (1) (b) (i), she was not free from control or direction in the performance of her services. Again, her position lacks merit. The main feature of an employer/employee relationship is the employer's right to control or direct the means or manner of doing the work. Hanson v. Kynast (1986), 24 Ohio St.3d 171, 173, citing Bobik v. Indus. Comm. (1946), 146 Ohio St. 187. See, also, Ohio Adm. Code 4141-3-05 (B) (1). If there exists merely a right to control and direct the end result of the work, then the relationship is that of principal/independent contractor. Id.
See, also, Gillum v. Indus. Comm. (1943), 141 Ohio St. 373. The determination of whether a claimant has been directed or controlled in the means and manner of working involves complex factual matters and is performed on a case-by case basis. Bosticv. Connor (1988), 37 Ohio St.3d 144. See, also, Ohio Adm. Code4141-3-05 (B) (1)-(20) which lists the factors which the administrator of OBES uses to assist in his decision-making on the direction and control issue.
Appellant points to her contract which states that she agrees to provide services "under the direction" of the Health Commissioner, Gary Ryan who was appointed as the grant's program director as per the grant's terms. Appellant testified that on January 18, 1996, Mr. Ryan told her that she could not work at home. Mr. Ryan testified that if she worked at home, then the City could lose the grant because it was providing its mandated match funds through in-kind services such as office space and utility bills. Appellant admits that Mr. Ryan gave her little guidance while he was the program director and that most of her meetings with him involved a collaborative effort and mutual decision-making.
Appellant states that it was strongly recommended by the Board of Health that she keep regular office hours. However, on January 26, 1996, she wrote a letter to the Board which stated that she will not work regular office hours on Mondays and some Tuesdays because she is enrolled in graduate courses on those days. She also informed them that she needed to work some evenings in order to do her job properly. This letter was typed on stationery with a letterhead that read, "Butts Consulting." Appellant admits that she was not subject to the City's personnel policy manual as were City employees. Further, appellant did not contemplate continuing employment in her position. See Ohio Adm. Code 4141-3-05 (B) (6). She had a one year contract which could have ended sooner depending on the state's distribution of future grant funds.
Mr. Ryan resigned from the position as the grant's program director and Marshall Bleckman, a grant administration consultant, was hired as the program director. The position paid approximately $7,000 per year. Appellant admits that Mr. Bleckman was an independent contractor. She also states that he exercised direction over her work. She submitted a letter from Mr. Bleckman which stated that appellant reported to him on a regular basis and was required to indicate her hours on time cards. First, we must point out that one who is directed by an independent contractor does not become an employee of the principal who hired the independent contractor. Commercial Motor Freight v. Ebright
(1944), 143 Ohio St. 127, 134. Second, Mr. Blecknan did not state that he directed or controlled appellant; he merely stated that she reported her progress to him. Often, being required to make written or oral reports is a characteristic of an employee. Ohio Adm. Code 4141-3-05(B)(11). However, in this case, the reporting requirement was mandated by the terms of the grant not by the desire of the City or its Board of Health. It is reasonable to believe that appellant dictated her own day-to-day operations and came and went as she pleased. The only evidence of direction and control is with regards to the end result or the overlying structure of implementation in order comply with the terms of the grant. The existence of a principal who has direction and control over the end result or objective is a usual characteristic of an independent contractor. See, e.g., Hanson, supra at 173.
Moreover, appellant sought payment for her services by submitting biweekly invoices or purchase orders in lieu of the time cards that city employees submitted. Appellant was paid with accounts payable checks rather than with payroll checks. Appellant was aware of this difference in payment because she had previously worked as an employee of the City. Additionally, all funds received by appellant came directly from a separate account which solely contained grant funds. The City did not take any money out of appellant's pay, such as income taxes or Medicare. Appellant was given a 1099 form to complete her taxes, and her accountant told her that she was an independent contractor. Appellant had to purchase her own health insurance, life insurance, and workers' compensation coverage. Also, she did not participate in Public Employees Retirement System to which all City employees are required to contribute. Further, the evidence suggests that the City's Board of Health considered the fact that appellant did not occupy a position which was covered under the unemployment compensation statutes. As a result of the outline submitted to them by appellant's co-worker, the Board of Health agreed to pay appellant an hourly wage which contained in its formulation the price that appellant would have to pay to OBES in order to ensure that she could collect unemployment compensation in the future. Appellant failed to procure these unemployment benefits because she kept the part of her wages allocated to unemployment compensation coverage instead of contributing to OBES.
Appellant states that the payment of her travel expenses implies that she was an employee. Nevertheless, the grant and not the City paid these expenses. In fact, her rate of reimbursement was calculated from the schedule distributed by the Ohio Department of Health's Bureau of Grants. Employees of the City were reimbursed for travel at a lesser rate. Appellant further argues that the fact that she had to train for her position works in favor of her argument that she is an employee, citing Ohio Adm. Code 4141-3-05 (B)(2). However, it was the terms of the federal/state grant that required an abatement coordinator who was trained in the field of lead abatement. Once again, appellant's training was paid for by the grant not by the City.
Although many of the factors in Ohio Adm. Code 4141-3-05 (B) seem to work in appellant's favor, these are factors for use by the OBES administrator. They are not necessarily the factors utilized by courts in determining if reasonable minds could find that a claimant was not subject to direction and control over performance of services. Moreover, the code is permissive and states that "[d]irection or control may be evidenced by" the twenty factors. Also, this case is unique in that many of the requirements of appellant's position were mandated by a grant not by the City who was awarded the grant. After reviewing the aforementioned evidence, we hold that rational minds could come to the conclusion that the City did not direct or control the means and manner in which appellant performed her services.
We may now address the final prong of the three-part test set forth in R.C. 4141.01 (B) (1) (b), i.e., whether appellant was "customarily engaged in an independently established trade, occupation, profession, or business." Appellant contends that the fact that she did not use her own equipment or have a separate office or work for any other person demonstrates that she was not an independent contractor. See Ohio Adm. Code 4141-3-05 (B) (14) and (17). As discussed earlier, the City contributed office space and supplies in order to partially match the grant funds with in-kind services as it was required to do. As for the business cards supplied to appellant by the City, Mr. Ryan testified that he approved the funds for the business cards as part of the City's grant matching obligation, but that appellant specified the layout for her card. The fact that appellant did not work for other entities during her one and one-half years working on the grant does not conclusively establish that appellant was an employee. She was not precluded from performing lead abatement or similar services for others as a consultant for "Butts Consulting," as her letterhead proclaimed. In doing so, she could have opened her own office in her home or elsewhere. Instead of working for others, appellant spent her excess time on graduate studies.
Appellant was a sanitarian before she began working on the grant. She obtained a college degree to gain such a title. There is no evidence that a registered sanitarian is not customarily engaged in the profession as an independent contractor. Solely because there is no evidence that appellant had previously worked as an independent contractor does not mean that she did not begin to provide services as an independent contractor when she started work on the lead abatement grant. She admitted that she was aware that her contract specified she was an independent contractor. She knew why the Board of Health did not want her to be an employee of the City. She consented to her status as a nonemployee. As set forth under the direction and control analysis supra, appellant was aware of the many aspects of her job that distinguished her from a City employee. Accordingly, we hold that reasonable minds could find that appellant was engaged in an independently established business, satisfying the last part of the tripartite test for determining whether a worker is engaged in covered employment, i.e., whether a service provider is an employee or an independent contractor.
In conclusion, appellant was basically working for a grant. The people involved with the grant who appellant alleges directed and controlled her work occupied their positions in order to okay the expenditure of grant funds and to ensure that compliance with the grant's terms was achieved; this power does not mean direction and control over the performance of services. It is hard to fathom an independent contractor who has the authority to expend unlimited and unchecked amounts of its principal's funds. Appellant performed a service for the City which was never before performed and which was not to again be performed for the City after the grant funds were depleted. Rational fact-finders could reach the conclusion that appellant was an independent contractor who was engaged in employment that was covered by the unemployment compensation statutes. The fact that reasonable minds could reach different conclusions is not a basis for reversal of the Board of Review's decision. Irvine, supra at 18. The Supreme Court of Ohio has advised reviewing courts to leave undisturbed such decisions on close questions about unique factual considerations. Id. As such, we will leave the decision in the case at bar undisturbed.
For all of the foregoing reasons, the judgment of the trial court is affirmed.
Cox, P.J., concurs.
Waite, J., concurs.
APPROVED:
 _____________________________ JOSEPH J. VUKOVICH, JUDGE