OPINION
{¶ 1} Defendant-appellant, Quan Le, d.b.a. Le Law Office, appeals from the decision of the Belmont County Court, Western Division, which entered judgment for $582.73 with interest at 6% per annum in favor of plaintiff-appellee, M. Theaker Son Exc, Inc. on its small claims complaint.
 {¶ 2} Appellant hired Roger Lagowski (Lagowski) to do some landscaping at his home. Lagowski ordered two loads of topsoil for appellant's landscaping from appellee for the price of $400.
 {¶ 3} Teri Simpson (Simpson), secretary for appellee, spoke on the phone with either appellant or Lagowski or both men about the purchase and delivery of the topsoil.
 {¶ 4} The first load was delivered to appellant's home by Wayne Henderson (Henderson), driver for appellee, on September 29, 2004. It was addressed to Lagowski. The loads appear on Henderson's work order for that day. Lagowski also ordered topsoil from Reno Morelli and Sons, Inc. (Morelli), which appellant subsequently paid for.
 {¶ 5} It was disputed whether or not Lagowski accepted the first load of topsoil and whether or not the second load was delivered and accepted.
 {¶ 6} Simpson sent the original invoice (#007620) for $400 to appellant at his office. Subsequent invoices were sent to appellant when the original was not paid. Interest for late payment was added to each bill.
 {¶ 7} Following the filing of a small claims complaint and subsequent bench trial, judgment was entered for the appellee on November 27, 2006, for the price of the two loads of topsoil plus interest. This appeal followed.
 {¶ 8} Appellant raises three assignments of error. The first of which states:
 {¶ 9} "THE TRIAL COURT ERRED IN NOT DISMISSING THE ABOVE-CAPTIONED MATTER BASED ON THE STATUTE OF FRAUDS."
 {¶ 10} A contract for the sale of goods for the price of $500 dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by *Page 2 
the party against whom enforcement is sought or by his authorized agent or broker. R.C. 1302.04(A).
 {¶ 11} While the contract for the sale of topsoil between the appellee and appellant was not put in writing, neither was it for $500 or more. The original, oral contract was made for $400. Only with two years of interest does the topsoil cost $582.73. The Statute of Frauds applies to the price of the goods at the time of sale. There is nothing in the Statute of Frauds to limit or make void agreements of this kind. Because the interest rate caused the topsoil's price to reach and surpass $500, this contract does not fall within the statute on that basis.
 {¶ 12} Even if the contract did fall within R.C. 1302.04(A), an oral contract for an amount of $500 or more is enforceable with respect to goods for which payment has been made and accepted or which have been received and accepted. R.C. 1302.04(C)(3). Here, the issue becomes whether or not the topsoil was accepted by appellant. Both parties agree that the topsoil was delivered on September 29, 2004, but there is a dispute over whether it was accepted. Appellee's delivery person, Henderson contends that he delivered the topsoil to appellant's home, and that the landscapers took both loads. (Tr. 11-12.) Simpson verified that nothing was sent back. (Tr. 10.) Conversely, Lagowski alleges that he sent back the first load because of its poor quality compared to Morelli's clean topsoil. (Tr. 8.) He did not recall a second load. (Tri. 9.)
 {¶ 13} To prove partial performance, a plaintiff must demonstrate that his acts were performed in exclusive reliance on the oral contract, and that the acts prejudicially changed the party's position. McDermott v.McDermott, 6th Dist. No. F-02-023, 2003-Ohio-2361, at ¶ 9. It is apparent that topsoil was ordered and sent to appellant's home, either by appellant himself or on his behalf. Furthermore, according to Henderson, Lagowski accepted and received the topsoil at appellant's home. Without payment, appellee will have received nothing for the loss of the two loads of topsoil which would amount to prejudice.
 {¶ 14} Because appellee is able to prove that its acts were performed in *Page 3 
reliance on the contract, and that it was prejudiced when appellant refused to pay the invoice, appellee has proven that it partially performed. Therefore, even if the contract falls within the Statute of Frauds, it is still enforceable under R.C. 1302.04(C)(3).
 {¶ 15} Accordingly, appellant's first assignment of error is without merit.
 {¶ 16} Appellant's second assignment of error states:
 {¶ 17} "THE TRIAL COURT ERRED IN FINDING THAT ROGER LAGOWSKI WAS AN AGENT OF DEFENDANT/APPELLANT LE LAW OFFICE."
 {¶ 18} "The statute of frauds does not change the law as to the rights and liabilities of principals and agents, either as between themselves, or as to third persons.'" Park v. Acierno, 7th Dist. No. 04 MA 87,2005-Ohio-1332, at ¶ 47, quoting Thayer v. Luce (1871), 22 Ohio St. 62,78. The act of an agent constitutes the act of the principal. Yank v.Howard Hanna Real Estate Servs., 7th Dist. No. 02 CA 117, 2003-Ohio-3471, at ¶ 31, citing Lepera v. Fuson (1992),83 Ohio App.3d 17, 23, 613 N.E.2d 1060. Therefore, appellant can be held liable for the actions of Lagowski if he was his agent.
 {¶ 19} The Ohio Supreme Court has stated: "The relationship of principal and agent or master and servant is distinguished from the relationship of employer and independent contractor by the following test: Did the employer retain control, or the right to control, the mode and manner of doing the work contracted for? If he did, the relationship is that of principal and agent or master and servant. If he did not but is interested merely in the ultimate result to be accomplished, the relationship is that of employer and independent contractor."Councell v. Douglas (1955), 163 Ohio St. 292, 56 O.O. 262,126 N.E.2d 597, paragraph one of the syllabus.
 {¶ 20} Appellant argues that he was only interested in the ultimate result to be accomplished; however, his testimony proves that he was involved with several aspects of the product. Appellant was present for the phone call with Morelli and the subsequent delivery of topsoil. (Tr. 14.) Further, it appears that Lagowski had to receive permission from appellant before acting. (Tr. 14.) He did not relinquish *Page 4 
control of the project to Lagowski.
 {¶ 21} Still, the Ohio Supreme Court has remarked that the degree of control necessary to establish agency has not been clearly defined.Hanson v. Kynast (1986), 24 Ohio St.3d 171, 175, 24 OBR 403,494 N.E.2d 1091. Instead of attempting to apply a definition to the facts of a case, courts have generally examined various factors to determine whether the requisite amount of control exists. Id. In Hanson, the Court listed some of these factors: (1) whether the individual was performing in the course of the principal's business rather than in some ancillary capacity; (2) whether the individual was receiving any compensation from the principal; (3) whether the principal supplied the tools and the place of work in the normal course of the relationship; (4) whether the individual offered his services to the public at large or to one individual at a time; (5) the length of employment; and (6) the right to terminate the employee at will.
 {¶ 22} Appellant is correct in asserting that because he is a lawyer and not a landscaper factor number one will not be met. While Lagowski's work on appellant's lawn is ancillary to appellant's work as a lawyer, this does not necessarily make the relationship that of employer and independent contractor. Factors are to be weighed against one another to determine what conclusion the evidence supports.
 {¶ 23} Lagowski received compensation from appellant for his work as landscaper. Lagowski likely used his own set of tools, but he was supplied the work location. Additionally, there is nothing in the record to support appellant's argument that Lagowski offered his services to the public at large. It is just as likely that he offered his landscaping expertise to one individual at a time. He may only undertake one project at a time, spending a few weeks with one individual and then moving on to the next. Finally, there is no mention in the record of the last two factors; however, it can be assumed that appellant had the power to terminate Lagowski at will. Landscaping does not have job security; a homeowner will retain the power to terminate his landscaper when he is not pleased with his or her services. It cannot be reasonably expected that a homeowner will have to show just cause before firing *Page 5 
the landscaper. While the evidence appears to prove that Lagowski was appellant's agent, for most of these factors only assumptions can be made about the relationship.
 {¶ 24} Furthermore, the existence of an agency relationship is a question of fact. Park v. Acierno, 7th Dist. No. 04 MA 87,2005-Ohio-1332, at ¶ 47, citing McSweeney v. Jackson (1996),117 Ohio App.3d 623, 630, 691 N.E.2d 303. Thus, appellate courts have held that they will not overrule reasonable conclusions by the trier of fact simply because they might not have reached the same result.McSweeney, 117 Ohio App.3d at 631, citing Western Specialty Co. v. N.Royalton Beverage Ctr (1997), 8th Dist. No. 35806.
 {¶ 25} Because deference is given to trial courts in determining the facts of a case, and because the Belmont County Court's decision was supported by the record, it is reasonable to conclude that an agency relationship existed between appellant and Lagowski.
 {¶ 26} Accordingly, appellant's second assignment of error is without merit.
 {¶ 27} Appellant's third assignment of error states:
 {¶ 28} "THE RULING BY THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF EVIDENCE IN THE INSTANT MATTER."
 {¶ 29} To begin, appellant asserts that an appellate court's manifest-weight-of-the-evidence standard of review is the same in the civil context as it is in the criminal context. Citing Bilder v. MainPaint Auto Body, 9th Dist. No. 20723, 2002-Ohio-748. Recently, inState v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, at ¶ 24-26, the Ohio Supreme Court concluded that they are not, explaining:
 {¶ 30} "[T]he civil manifest-weight-of-the-evidence standard was explained in CE. Morris Co. v. Foley Constr. Co., 54 Ohio St.2d 279,8 O.O.3d 261, 376 N.E.2d 578, syllabus (`Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence'). We have also recognized when reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has *Page 6 
an obligation to presume that the findings of the trier of fact are correct. Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77,80-81, 10 OBR 408, 461 N.E.2d 1273. This presumption arises because the trial judge had an opportunity `to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' Id. at 80, 10 OBR 408, 461 N.E.2d 1273. `A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not.' Id. at 81, 10 OBR 408, 461 N.E.2d 1273.
 {¶ 31} "The criminal manifest-weight-of-the-evidence standard was explained in State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541. In Thompkins, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386,678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387,678 N.E.2d 541. `When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387,678 N.E.2d 541, citing Tibbs v. Florida (1982), 457 U.S. 31, 42,102 S.Ct. 2211, 72 L.Ed.2d 652.
 {¶ 32} "Both CE. Morris Co., 54 Ohio St.2d 279, 8 O.O.3d 261,376 N.E.2d 578, and Thompkins instruct that the fact-finder should be afforded great deference. However, the standard in CE. Morris Co. tends to merge the concepts of weight and *Page 7 
sufficiency. See State v. Maple (Apr. 2, 2002), 4th Dist. No. 01CA2605,2002 WL 507530, fn. 1; State v. Morrison (Sept. 20, 2001), 10th Dist. No. 01AP-66, 2001 WL 1098086. Thus, a judgment supported by `some competent, credible evidence going to all the essential elements of the case' must be affirmed. CE. Morris Co. Conversely, underThompkins, even though there may be sufficient evidence to support a conviction, a reviewing court can still reweigh the evidence and reverse a lower court's holdings. State v. Thompkins, 78 Ohio St.3d 380,678 N.E.2d 541. Thus, the civil-manifest-weight-of-the-evidence standard affords the lower court more deference then does the criminal standard. See Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159,694 N.E.2d 989."
 {¶ 33} In order for appellant to prevail on the substantive merits of his weight-of-the-evidence argument, he must demonstrate that there was no credible evidence which the trial court could have relied upon in reaching its determination that appellant had kept the topsoil delivered by appellee. Appellant's argument relies on Lagowski's testimony; however, the trial court not only listened to Lagowski, but also listened to appellant, and appellee's employees, Henderson and Simpson. Additionally, he had five items from appellee and two from appellant to examine as evidence before ruling on the case. Here, the judge acting as the trier of fact weighed the evidence and ruled in favor of appellee.
 {¶ 34} Again, there was evidence that a call was made to appellee and an order placed for two loads of topsoil. While Henderson contends that the landscapers took both loads, Lagowski maintains that the he inspected the first load and sent it back. Simpson did not recollect the load being returned, and she further explained that if it had been refused, the owner of M. Theaker and Son would not have charged them, but instead put a notation that the topsoil was refused. Simpson also testified that in her two years of conversations with appellant this was the first time that he had raised the affirmative defense of refusal. Although the evidence was conflicting, some competent, credible evidence was presented for the trial court to conclude that appellant through his agent, Lagowski, had accepted the topsoil *Page 8 
delivered by appellee.
 {¶ 35} Accordingly, appellant's third assignment of error is without merit.
 {¶ 36} The trial court's judgment is hereby affirmed.
 Vukovich, J., concurs. Waite, J., concurs. *Page 1