| JACOB TURNER | Case No. 2016-00769JD |
| Plaintiff | Judge Patrick M. McGrath<br>Magistrate Anderson M. Renick |
| v. | |
| | DECISION |
| UNIVERSITY OF CINCINNATI | |
| Defendant | |

{¶1} Before the court are (1) a motion for summary judgment with an attendant memorandum filed on April 13, 2018, by defendant University of Cincinnati (UC) wherein UC contends that it is entitled to judgment as a matter of law on plaintiff Jacob Turner's corrected complaint and (2) an unopposed motion for leave to file a reply brief filed on May 22, 2018 by UC. Because the court determines that UC is entitled to judgment as a matter of law, the court concludes that UC's motion for summary judgment should be granted and that UC's motion for leave to file a reply brief should be denied as moot.

## I. Background

{¶2} On October 27, 2016, Turner, through counsel, filed a corrected complaint alleging that, about two years earlier, on October 26, 2014, at about 8:30 p.m., he was a passenger in a motor vehicle, which was owned by Sherri M. Messmore and which was being driven by Connor Messmore. According to Turner, Connor Messmore—a member of UC's Ultimate Frisbee Club Team—"was driving Mr. Turner and three other teammates home from a sanctioned tournament in Columbus, Ohio that the club team had been scheduled to participate in with knowledge of the defendant. Consequently, Mr. Messmore was operating a non-owned vehicle in the conduct of the University of Cincinnati's business." (Corrected Complaint, ¶ 6.)

{¶3} Turner asserts that, while Connor Messmore was traveling southbound on Interstate 71, Connor Messmore "negligently allowed his vehicle to drift off the left side of the roadway, striking the concrete divider, then heading right across all southbound lanes of travel, striking a vehicle, then veering off the roadway and striking a tree." (Corrected Complaint, ¶ 5.)  Turner maintains that, as a "direct and proximate result" of the incident, he "sustained injuries to his face, mouth, teeth, and ankle, among injuries to other parts of his body, causing severe pain, suffering, mental anguish and permanent injury, for the treatment of which he has undergone at least ten (10) surgeries and has incurred reasonable medical expenses in an amount in excess of Four Hundred Seventy-Six Thousand Dollars ($476,000.00) and expects to incur such expenses in the future."  (Corrected Complaint, ¶ 10.)

{¶4} In the corrected complaint, Turner contends that UC should be held liable (1) because "at all times pertinent to this action, [UC] provided bodily injury liability coverage through the Inter-University Council – Insurance Consortium Joint Self-Insurance Pool (hereinafter Agreement)" (Corrected Complaint, at ¶ 3), and (2) because "[u]nder the terms of the Agreement, at the time of the accident * * * Connor Messmore was a protected person and Mr. Messmore's auto was a covered auto entitling Jacob Turner to recover damages against [UC] for his bodily injuries caused by Mr. Messmore's negligence."  (Corrected Complaint, ¶ 8.)  According to the corrected complaint, Turner "demands judgment against defendant University of Cincinnati and prays for compensatory and general damages in an amount in excess of Twenty Five Thousand Dollars ($25,000.00), said plaintiff further demands interest, costs and any further just relief."  Turner's corrected complaint does not contain a claim for a declaratory judgment.  And Turner does not pray for a declaratory judgment in the corrected complaint's demand.

{¶5} On April 13, 2018, UC moved for a summary judgment.  UC maintains that it is entitled to judgment as a matter of law (1) because there was no agency relationship

between UC and Connor Messmore, (2) because Messmore did not receive permission from UC to go on the trip to Columbus, (3) because Turner and his teammates did not complete paperwork required for the trip to Columbus, and (4) because Turner and the other members of the UC Ultimate Club Frisbee Team failed to rent a vehicle to travel to Columbus, which, according to UC, is necessary for coverage through the insurance agreement.  In support of its summary judgment motion, UC relies on (1) an affidavit of Jeffery Logsdon, program coordinator for club sports at UC, that is dated April 6, 2018, (2) an exhibit attached to Logsdon's affidavit of April 6, 2018, (3) Logsdon's testimony from a deposition held on April 3, 2018, (4) an affidavit of Elizabeth A. Conlin, director of the Inter University Council (IUC) – Insurance Consortium, and (5) an exhibit attached to Conlin's affidavit—a copy of the Inter-University Council-Insurance Consortium Joint Self-Insurance Pool Automobile Liability Coverage Agreement, Coverage Agreement Number: IUCIC-AL-July 2014-15 (Insurance Policy).

{¶6} On May 18, 2018, Turner filed a memorandum opposing UC's summary judgment.  Turner also has filed two exhibits: (1) Exhibit 4 to Logsdon's deposition and (2) Exhibit 5 to Logsdon's deposition.  By Turner's memorandum in opposition, Turner "requests that the Court declare that Defendant's Insurance Policy covers his injuries and damages, whereby rendering Defendant's Motion for Summary Judgment moot; or in the alternative, Plaintiff requests that Defendant's Motion for Summary Judgment be denied."  Turner states in his memorandum: "This Court should treat Defendant's Motion, in part, as a Motion for Declaratory Judgment regarding the limited question of whether Messmore is a protected person under the Insurance Policy and whether Messmore's automobile is a covered auto under the Insurance Policy."

{¶7} On May 22, 2018, UC moved the court for leave to file a reply to Turner's memorandum in opposition; UC represented to the court that Turner "ha[d] no objection to Defendant's request."  Two days later—on May 24, 2018—Turner filed a "Notice To Clarify For The Record" wherein (1) Turner indicated that he "remains unopposed" to

UC's motion for leave to file a reply; (2) he took issue with a paragraph in UC's motion for leave to file a reply brief; and (3) Turner stated that "it is erroneous to state that Plaintiff has asked for affirmative relief in the form of a declaratory judgment as it is Plaintiff's position that Defendant is the one who sought affirmative relief in the form of a declaratory judgment, albeit inaccurately titling it as a Motion for Summary Judgment."

{¶8} Turner's suggestion that this court should treat UC's summary judgment, in part, as a motion for declaratory judgment is not well-taken for several reasons: (1) this court's role is that of a neutral arbiter of matters that are properly presented to the court; the court's role generally does not include refashioning a party's motion, *see Greenlaw v. United States*, 554 U.S. 237, 243, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008) (stating that in "our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present"); *id.* at 244, quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (CA8 1987) (R. Arnold, J., concurring in denial of reh'g en banc) ("'[Courts] do not, or should not, sally forth each day looking for wrongs to right. We wait for cases to come to us, and when they do we normally decide only questions presented by the parties'"); (2) Turner's corrected complaint does not present a declaratory-judgment claim for the court to adjudicate; (3) when Turner filed his lawsuit in this court he "was aware" of the university's Insurance policy, yet Turner did not present a claim for declaratory relief in his corrected complaint (Memorandum in Opposition, 3; Complaint); (4) Turner has not sought to amend his complaint in a manner set forth in Civ.R. 15(A) for the purpose of adding a claim for a declaratory judgment; and (5) UC expressly has moved for summary judgment under Civ.R. 56(C) regarding a complaint that does not contain a claim for a declaratory judgment.

{¶9} Because there is no proper claim for a declaratory judgment as to the Insurance Policy, the court should not issue a binding determination that establishes the

rights and other legal relationship of the parties with respect to the Insurance Policy. UC's summary judgment motion and Turner's response therefore raise these issues for the court's determination: (1) whether there is a genuine issue of material fact relative to whether Connor Messmore's purported negligence may be imputed to UC, (2) whether in this instance automobile liability coverage provided to UC through an agreement with the Inter-University Council – Insurance Consortium Joint Self-Insurance Pool imputes liability upon UC for Connor Messmore's purported negligence.

## II. Law and Analysis

### A. Standard of review for summary judgment.

{¶10} Civ.R. 56(C) pertains to motions and proceedings for summary judgment, stating in part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule." In *State ex rel. Grady v. State Emp. Rels. Bd.*, 78 Ohio St.3d 181, 183, 677 N.E.2d 343 (1997), construing Civ.R. 56(C), the Ohio Supreme Court stated: "Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *Temple v. Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327, 4 Ohio Op. 3d 466, 472, 364 N.E.2d 267, 274." And in *Dresher v. Burt*, 75 Ohio St.3d 280, 298, 662 N.E.2d 264 (1996), a plurality opinion, the Ohio Supreme Court stated that "there is no *requirement* in Civ.R. 56 that *any* party submit affidavits to support a motion for

summary judgment.  See, *e.g.*, Civ.R. 56(A) and (B). There *is* a requirement, however, that a moving party, in support of a summary judgment motion, specifically point to something in the record that comports with the evidentiary materials set forth in Civ.R. 56(C)."  (Emphasis sic.)  And *Dresher* holds that

> a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some *evidence* of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.

(Emphasis sic.)  *Id.* at 293.

{¶11} The court shall apply the foregoing standard to UC's summary judgment motion that is before the court.

**B. Connor Messmore's actions may not be legally imputed to UC because, at the time of the accident, Connor Messmore was not an officer or employee of the state and because, as a matter of law, the relationship between UC and Connor Messmore is not that of a principal and agent.**

{¶12} The General Assembly has enacted legislation that, subject to exceptions, waives the state's immunity from liability, and allows the state to have its liability determined in this court "in accordance with the same rules of law applicable to suits between private parties * * *."  R.C. 2743.02(A)(1).  According to R.C. 2743.02(A)(2), if a

claimant "proves in the court of claims that an officer or employee, as defined in [R.C. 109.36], would have personal liability for the officer's or employee's acts or omissions but for the fact that the officer or employee has personal immunity under section 9.86 of the Revised Code, the state shall be held liable in the court of claims in any action that is timely filed pursuant to section 2743.16 of the Revised Code and that is based upon the acts or omissions." And pursuant to R.C. 109.36(A)(1), the term "officer or employee" "means any of the following:(a) A person who, at the time a cause of action against the person arises, is serving in an elected or appointed office or position with the state or is employed by the state." *See* R.C. 109.36(A)(b)-(d) (defining the term "officer or employee").

{¶13} By his corrected complaint, Turner has not alleged that, at the time of the accident, Connor Messmore was a person elected or appointed to a public office, or that Connor Messmore was employed by the state. Rather, according to Turner's corrected complaint, Connor Messmore is alleged to have been a member of UC's Ultimate Frisbee Club Team. (Corrected Complaint, ¶ 6.) In a deposition Turner testified that, Connor Messmore was 18 years old at the time of the accident, and that Connor is "a grade below me." (Turner Deposition of January 9, 2017, 20.) And, according to a counsel's representation in Logsdon's deposition, after Turner's accident, university officials exchanged email correspondence that contained information indicating that at the time of the accident Connor Messmore was a UC student. (Logsdon deposition of April 3, 2018, 15, 17.) Additionally, when Turner was asked whether Connor Messmore ever told Turner whether he was employed at UC, Turner stated: "No, he did not say that to me." Thus, construing the evidence in favor of Turner, the evidence shows that at the time of the accident Connor Messmore was a student at UC and he was not an employee of UC. Therefore, in this case for UC to be held liable for the actions or omissions of Messmore, a principal-agent relationship needs to be established between Messmore and UC.

{¶14} To support its claim that there is no principal-agent relationship between UC and Messmore, UC cites to *Hanson v. Kynast*, 24 Ohio St.3d 171, 494 N.E.2d 1091 (1986). Turner urges, however, that UC's reliance on *Hanson* is misplaced. In *Hanson*, Brian Hanson, a student, sustained a paralyzing injury while playing in a lacrosse game between Ohio State University and Ashland University, Inc. at the Ashland University lacrosse field. As described by the Ohio Supreme Court,

> During the game Roger Allen, an OSU player, intercepted an Ashland player's pass and scored a goal. As Allen was scoring the goal, he was body-checked from behind by Ashland defender William D. Kynast. Allen fell and Kynast allegedly stood over Allen taunting him. Brian Hanson saw the contact and Kynast's subsequent behavior. Concerned for Allen's welfare, Hanson grabbed Kynast from the side or back and held him in a bear hug. Kynast immediately twisted and threw Hanson off his back. Hanson's head struck the ground and he sustained serious injuries.
>
> The trainers for both teams came onto the field to attend Hanson. After discovering the seriousness of his injury (Hanson was numb and could not move), an assistant trainer for Ashland was sent to telephone the fire department for an ambulance.
>
> Upon arriving on the scene, the ambulance driver discovered that the main entrance to the playing field was blocked by an illegally parked automobile. As a result, the ambulance driver had to find another entrance.

*Hanson* at 171-172. Hanson later sued Kynast and Ashland University in a common pleas court, maintaining that, because Kynast was acting as the agent of Ashland University, the university was therefore liable for Kynast's wrongful acts under the doctrine of *respondeat superior* and that the university was directly liable for negligently failing to have an ambulance or emergency vehicle present at the site of the game, and in permitting a motor vehicle to be parked so as to block the main entrance to the playing field. Ashland moved for summary judgment. The common pleas court granted Ashland's motion, holding that no agency relationship existed between Kynast and

Ashland University and that Ashland did not have a legal duty to have an ambulance at the game. In a split decision, an appellate court reversed the common pleas court's judgment, holding that genuine issues of material fact existed on the question of agency and upon the university's duty to provide medical personnel at the game.

{¶15} The Ohio Supreme Court reversed the appellate court, agreeing with the trial court's conclusion that there was an absence of proof as to the existence of a principal-agent relationship and agreeing with the trial court's general finding that, as a matter of law, Ashland University was not bound by Kynast's conduct under the doctrine of *respondeat superior. Hanson* states:

> This court is of the opinion that this relationship between Kynast and Ashland is a relationship common to many students attending universities. A university offers a diversified educational experience which includes classroom instruction in a great variety of subjects as well as optional participation in events such as school clubs, and intramural and intercollegiate sports. All of these offerings are designed to expand and enrich a student's overall educational experience. Students evaluate and determine which university best meets their needs, and then pay a fee to attend that university. The relationship formed under these conditions has previously been characterized as contractual. *Zumbrun* v.. *U.C.L.A.* (1972), 25 Cal. App. 3d 1, 10, 101 Cal. Rptr. 499, 502. The student pays a fee and agrees to abide by the university rules. In exchange, the university provides the student with a worthwhile education.
>
> *This relationship does not constitute a principal-agent relationship. The student is a buyer of education rather than an agent.* Restatement of the Law 2d, Agency (1958) 73, Section 14 J, states that a buyer retains goods primarily for his own benefit, while an agent is one who retains goods primarily for the benefit of the one who delivers those goods. In the instant case, the "goods" to be delivered is an education and the university delivers that education to the student for a fee. It is clear that a student retains the benefit of that education for himself rather than for the university.

(Emphasis added). *Hanson* at 174. The court determines that *Hanson* is controlling for the legal proposition that in this case the relationship between UC and Connor Messmore *is not* that of a principal and agent.

{¶16} Nonetheless, in Turner's corrected complaint Turner seems to suggest that liability should be imputed to UC based on the Insurance Policy that provides automobile liability coverage to UC. The court finds this contention to not be well-taken.

{¶17} An insurance policy is a contract. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 9. And the Ohio Supreme Court has held that the construction of written contracts is a matter of law. *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph one of the syllabus. In *Alexander*, the court held that common words appearing in a written instrument "will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander* at paragraph two of the syllabus. Here, the Insurance Policy states: "In consideration of payment of premium and in reliance upon statements made in the applications, the IUC-Insurance Consortium agrees to provide its Member Institutions with the Coverage set forth in this Coverage Agreement. Such coverage is subject to the limitations, conditions, provisions and other terms of this Coverage Agreement." Thus, by the policy's express terms the contract is between IUC-Insurance Consortium and its member institutions. And, based on the court's review of the Insurance Policy, the court does not find a provision in the Insurance Policy that purports to impute liability to a member institution for the acts of a student of a member institution, which were performed while driving a car owned by a student's family member. With regard to whether liability may be imputed to UC for Connor Messmore's purported negligence, the court therefore determines that (1) no genuine issue as to any material fact remains to be litigated in this case, (2) UC is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and

viewing such evidence most strongly in favor of Turner, that conclusion is adverse to Turner.

{¶18} Turner urges, however, that the Insurance Policy's coverage "extends to Messmore because he is a protected person under the Insurance Policy and that he was driving a covered vehicle act at the time of the accident." (Memorandum In Opposition, 3-4.) Whether Messmore should be deemed a protected person under the Insurance Policy is not properly before the court because Turner has failed to assert a claim for a declaratory judgment that asks the court to establish the rights and other legal relationship of the parties with respect to the Insurance Policy. *See generally* R.C. 2743.03(A)(2) (conferring exclusive, original jurisdiction to this court to issue a ruling on a declaratory judgment claim, if a claimant in a civil action described in R.C. 2743.03(A)(1) "also files a claim for a declaratory judgment, injunctive relief, or other equitable relief against the state that arises out of the same circumstances that gave rise to the civil action described in [R.C. 2743.03(A)(1)]"). Moreover, whether in this case Turner made a claim under the Insurance Policy is uncertain because, in response to a question posed to him in a deposition that asked whether Turner notified UC that he was making any type of claim under any policy of insurance that UC may have, Turner answered: "I'm not sure. I don't think so. If I made a claim?" (Turner deposition dated January 9, 2017, 64.)

{¶19} Under these circumstances, if the court were to render a ruling on a non-existent declaratory-judgment claim or if the court were to render a ruling when no claim has been made on the Insurance Policy, this court essentially would be issuing an advisory opinion—a premature declaration on an issue or abstract proposition. But, as the Ohio Supreme Court stated nearly 50 years ago: "It has become settled judicial responsibility for courts to refrain from giving opinions on abstract propositions and to avoid the imposition by judgment of premature declarations or advice upon potential controversies." *Fortner v. Thomas*, 22 Ohio St.2d 13, 14, 257 N.E.2d 371 (1970).

*Accord Kyle v. Ohio State Univ.*, 10th Dist. Franklin No. 13AP-603, 2014-Ohio-2143, ¶ 30.  Accordingly, the court determines that judicial restraint cautions against issuing a premature ruling on a potential declaratory-judgment claim relative to the UC's automobile liability coverage agreement through the Inter-University Council—Insurance Consortium for the period of July 1, 2014 to July 1, 2015.  *See Capital Care Network of Toledo v. Ohio Dept. of Health*, Slip Op. No. 2018-Ohio-440, ¶ 31 ("As Chief Justice Roberts has stated, '[I]f it is not necessary to decide more, it is necessary not to decide more.' *PDK Laboratories, Inc. v. United States Drug Enforcement Admin.*, 362 F.3d 786, 799, 360 U.S. App. D.C. 344 (D.C.Cir.2004) (Roberts, J., concurring in part and concurring in judgment)").

### III. <u>Conclusion</u>

{¶20} Wherefore, because, as set forth above, the court concludes that UC is entitled to judgment as a matter of law, the court determines that UC's motion for summary judgment filed on April 13, 2018, should be granted.  The court further concludes that UC's motion for leave to file a reply brief filed on May 22, 2018, should be denied as moot.


PATRICK M. MCGRATH
Judge

| JACOB TURNER | Case No. 2016-00769JD |
|---|---|
| Plaintiff | Judge Patrick M. McGrath |
| | Magistrate Anderson M. Renick |
| v. | |
| | JUDGMENT ENTRY |
| UNIVERSITY OF CINCINNATI | |
| Defendant | |

{¶21} For the reasons set forth in the decision filed concurrently herewith, the court GRANTS defendant University of Cincinnati's motion for summary judgment filed on April 13, 2018. The court DENIES defendant University of Cincinnati's motion for leave to file a reply brief filed on May 22, 2018, as moot. Judgment is rendered in favor of defendant University of Cincinnati. Court costs are assessed against plaintiff Jacob Turner. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

PATRICK M. MCGRATH
Judge

**Filed May 30, 2018**
**Sent to S.C. Reporter 6/13/18**